EMMA R. SONN, DEFENDANT IN ERROR, v. THE ERIE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued February 19, 1901—Decided June 10, 1901.

A railroad company was required, by charter, "to construct and keep in repair good and sufficient bridges over or under the said railway where any public or other road shall cross the same, so that the

passage of carriages, horses and cattle across the said railway shall not be impeded thereby." At the grade crossing of a turnpike by the single-track railroad of said company the bridging consisted of planks, four inches thick, laid parallel with the rails. The crossing was diagonal, and was dangerous, because the view of trains was not clear. A bicyclist riding over the track was thrown from her wheel and injured, by reason of a gap in the bridging, just inside the farther rail in her course, caused by the removal of six feet in length of one of such planks. In a suit against the company to recover resultant damages—*Held*—

1. That the duty enjoined by the charter was one to the public lawfully using the highway, including those traveling on bicycles, and that the facts recited showed a breach of such duty.

2. That considering the character of the crossing and the duty of travelers to look for approaching trains, the failure of the bicyclist to notice such a gap in the bridging was not indisputably negligent.

On error to the Essex County Circuit Court.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff in error, *Cortlandt Parker.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

COLLINS, J. Recovery was had for personal injuries sustained by the plaintiff through being thrown from a bicycle while riding upon the Pompton turnpike across the New York and Greenwood Lake branch of the Erie railroad. This branch is a single-track road, originally constructed under the charter of the Montclair Railway Company (*Pamph. L.* 1867, *p.* 301), and at the time of the accident was owned and controlled by the defendant, upon which devolved, therefore, the duty imposed by section 9 of said charter "to construct and keep in repair good and sufficient bridges over or under the said railway where any public or other road shall cross the same, so that the passage of carriages, horses and cattle across the said railway shall not be impeded thereby." The railroad crosses the turnpike diagonally at grade, running northwest and

southeast, while the turnpike runs nearly north and south. The bridging of the track by defendant was effected by means of planks, four inches thick and eight inches wide, laid parallel with the rails and extending across the whole traveled way of the turnpike. The planks next the rails on the inside were two inches away, in order to allow space for wheel-flanges.

On August 18th, 1897, the plaintiff and a Mr. Van Duyne, to whom she was then engaged to be married, took a day's excursion from Newark. They went by way of the Pompton turnpike upon a tandem bicycle. On the outward trip nothing abnormal at the railroad crossing mentioned was perceived. On their return the accident occurred. According to the plaintiff's testimony it was caused by the front wheel of the bicycle running into a gap in the bridging caused by the removal of about six feet in length of the plank next inside the farther rail in her course.

The defendant contends that a bicycle is not a carriage, and that therefore its statutory duty above recited does not extend to bicyclists using the turnpike. We have a statute, enacted in 1888 (*Gen. Stat., p.* 2940), that declares that bicycles are carriages within the meaning of the Road act. It is plausibly argued that this statute imposes, and can impose, no additional burden upon the railroad company; and we are asked to take judicial notice that bicycles were unknown in 1867, when its duty was defined. Even so, it does not follow that a bicyclist has no rights against the railroad company. The duty imposed is to the public, not simply to those using carriages or owning horses or cattle. Every person using the turnpike has a right to assume that the railroad bridging will be constructed and kept in such repair as to be good and sufficient for the safe passage of carriages, horses and cattle, and if that duty is not performed resultant damages are recoverable by anyone lawfully and carefully using the highway. A gap in the bridging four inches in depth would surely impede carriages, and in case of those of light weight and slender construction might cause great injury, either to the vehicle or an occupant. That a bicyclist using a highway and injured

by some disturbance of its surface has an action against the disturber is already well settled. Our court of last resort has vindicated such right. *Gillespie Co.* v. *Cumming,* 33 *Vroom* 370; *Morhart* v. *North Jersey Street Railway Co.,* 35 *Id.* 236.

It is next contended that, as a prerequisite to liability of the company for injury resulting from the gap in the bridging, it was incumbent on the plaintiff to show that the company had notice of the gap or that it had existed long enough to raise a presumption of notice. As against a railroad company charged by law with the duty to the public imposed on the defendant it was sufficient, *prima facie,* to prove the defect. Exculpation was for the defendant. *Worster* v. *Forty-second Street and Grand Street Ferry Railroad Co.,* 50 *N. Y.* 203. Besides, there was evidence from which the jury might fairly infer that the plank was removed in the course of the company's work of repair.

It is lastly contended that the plaintiff was indisputably negligent in such manner as to contribute to her injury. She sat on the front seat of the bicycle, and, by mutual understanding, its guidance was left to her companion. It is claimed that had either of the two looked carefully the gap in the bridging would have been seen, as it was daylight—about half-past four P. M.—and the bicycle could have been stopped or so deflected as to go clear; but it must be remembered that in its nature the crossing was dangerous in reference to the approach of trains upon the railroad, and that the necessary looking for trains might distract attention. The plaintiff testified that there was not a clear view along the track, and from some of the defendant's evidence, also, that inference may be drawn. The plaintiff further testified that the rail cast a shadow that obscured clear vision of the adjacent space where the planking should have been. It was proved, too, that oil drippings had discolored the crossing planks next the rail so that there was no striking contrast in color between the gap and the planking on either side. It is argued, from an expression used by the plaintiff in her testimony, that the bicycle was not under proper control when

the crossing was attempted, but I think that the testimony is not open to that construction. It is as follows:

"*Q.* Who was steering the wheel?

"*A.* Mr. Van Duyne always steered the wheel; he requested me not to do it.

"*Q.* I mean at that time?

"*A.* Well, no one was steering then."

I think that this means that at the time of crossing the bicycle was pursuing a straight course, not that no control was being exercised over it. The bicycle was running on the right-hand side of the turnpike, and was kept in a straight course when the railroad was reached. The crossing of the railroad was, therefore, diagonal, and this is put forward as negligent. Had the wheel caught in a normal flange-space there would be force in the argument, but with reference to the defect with which the defendant was chargeable it is inconclusive.

A careful reading of the testimony satisfies me that the court would not have been justified in holding that there was no case for the jury on the question of contributory negligence.

Error is assigned on refusal to charge certain requests presented on behalf of the company, but, as its counsel very properly says in his brief, the argument on the refusal to nonsuit covered the questions arising on most of them. If the court ought to have charged as requested, it ought to have nonsuited. We find no request non-compliance with which was legal error. The case must turn upon the refusal to nonsuit upon which exception was sealed. Such refusal was proper, and the judgment will therefore be affirmed.