ELIJAH PIVER, DEFENDANT IN ERROR, v. PENNSYL-
VANIA RAILROAD COMPANY, PLAINTIFF IN ERROR.

Submitted July 12, 1908—Decided November 16, 1908.

1. A railroad company is liable for an injury resulting to a traveler
   from its failure to use reasonable care to keep the passageway
   over its tracks, maintained by it at a street intersection, in
   proper repair.
2. A trial judge cannot direct a verdict when the testimony that the
   parties have been permitted to introduce leaves any fact, material
   to the issue, in substantial dispute.

On error to the Camden County Circuit Court.

For the plaintiff in error, *Gaskill & Gaskill.*

For the defendant in error, *Matthew Jefferson* and *John
W. Wescott.*

The opinion of the court was delivered by

TRENCHARD, J. The plaintiff, Elijah Piver, while driving
on Fourth street, in the city of Camden, was thrown from
his wagon while crossing the tracks of the Pennsylvania
Railroad Company, where they intersect that street, and was
injured. This suit was brought to recover compensation for
such injuries. The plaintiff bases his right to recover upon
the allegation that the accident was due to the failure of the
railroad company to keep in proper repair the passageway
over its tracks.

The trial of the case resulted in a verdict and judgment in favor of the plaintiff, and the present writ of error brings up that judgment for review.

The assignments of error upon which defendant chiefly relies are based upon exceptions to the refusal of the trial judge to nonsuit the plaintiff and to direct a verdict on the ground that there was no negligence upon the part of the defendant company.

When the motion to nonsuit was refused the evidence justified the jury in finding the following matters of fact: That the plaintiff was driving in a wagon down Front street upon the trolley tracks laid in that street, when he came to the railroad crossing, and, as he was passing over one of the three parallel tracks laid there, one of the feet of his horse became fast between the rail and a plank, causing the animal to fall. The sudden checking of the wagon threw the plaintiff to the ground and injured him.

When this case was formerly here for review (*Piver* v. *Pennsylvania Railroad Co.,* 45 *Vroom* 619) the testimony then before the court failed to show where or in what manner the horse's foot was caught, and, in view of the testimony on the part of the defendant, was held to be insufficient to support a finding of any neglect of duty on the part of the defendant company in maintaining in good repair a proper passageway over its railroad tracks.

But the evidence now before the court, chiefly by reason of the witness Thompson's testimony, is different from that produced at the first trial, and supports the theory of the plaintiff that the horse's hoof was caught in a hole in the crossing between a plank and the rail resulting from want of proper repair.

The plaintiff, in his testimony, says: "My horse got his foot fast and threw him;  *  *  *  that pitched me forward; I went over the horse's head.  *  *  *  As soon as I could possibly get up I got up and the horse was laying on his side.  *  *  *  The next thing I saw was a man with a crowbar prying the horse's foot out from where it was fast there." He was then asked: "*Q.* Did you notice how it was that your

horse's hoof was caught? *A.* No, sir; I couldn't say positive how his foot was. His foot was down in between two some-things, but I couldn't say positive what."

The witness Thompson (not produced at the former trial) testified as follows:

"*Q.* Where were you standing?

"*A.* I was at the house at the time and I went to the window, the side window, and I seen that the horse was down there at the track.

* * * * * * * * * *

"*Q.* Then what did you do?

"*A.* I went over to assist him, and I went over and got hold of the horse's head and held the horse's head down so he would not get up, and while I was holding the horse's head a man went after a crowbar to get the horse's hoof out of the track.

"*Q.* Now, where was the horse's hoof fastened?

"*A.* It was caught—here is the track here, and here is the plank, and the horse's hoof was down, half way down.

"*Q.* Between the track and the plank?

"*A.* Yes, sir.

"*Q.* Now, how was the horse's hoof pried out?

"*A.* It was pried out with a crowbar.

* * * * * * * * * *

"*Q.* Did you notice what condition the horse's hoof was in when it came out?

"*A.* In bad condition.

"*Q.* Well, describe how it looked?

"*A.* Well, it looked to me as if the hoof was pretty near tore off, and bleeding very much."

On cross-examination he further testified:

"*Q.* Now, did you say in your direct examination that the horse's hoof was pried out from between a plank and a rail?

"*A.* Yes, sir.

"*Q.* Not pried out between two rails?

"*A.* No, sir; here was the plank and here was the rail where the car ran on.

"*Q.* Now, it is a fact that there were two rails there right together; one you would call the main rail and the other the guard rail?

"*A.* Yes, sir.

"*Q.* And it was not in that space that the horse's hoof was caught?

"*A.* It was caught—here is where the wheel of the car goes, you see, and here is the planks here, the wide planks; well, there was about that much opening there.

"*Q.* How much?

"*A.* About that much opening that they had not completely fixed, and the horse's hoof went down there and that is what caught him.

"*Q.* Between the plank and the rail?

"*A.* Yes.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q.* Was the space where the horse's hoof was caught between the two rails that form a single track or was it outside of one of the rails?

"*A.* No, it was on the inside of the rail.

"*Q.* So that the hoof then was caught in the space between the plank and the guard rail?

"*A.* Yes, sir.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q.* And the space where the horse's hoof was caught was right in there where the flange of the wheel runs, wasn't it; right in the space where the flange of the wheel runs?

"*A.* It was, yes; but as I am saying, here is the car track here, and here is the plank here; that is where the horse's hoof went down.

"*Q.* Between the rail and the plank?

"*A.* Between the rail and the plank.

"*Q.* And in the space where the flange of the wheel runs?

"*A.* Yes.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"*Q.* Did you see the hoof pried out?

"*A.* Yes, sir; I did.

"*Q.* Well, was it the shoe or the foot and hoof that was caught?

"*A.* It was the hoof caught.

"*Q.* It was the hoof?

"*A.* Yes, sir; that was caught.

"*Q.* And did you see it before it was pried out?

"*A.* I did; yes, sir.

"*Q.* And was the hoof in this space that you say existed?

"*A.* Yes, sir.

"*Q.* Not only the shoe, but the hoof as well?

"*A.* Yes, sir."

This testimony undoubtedly permitted of the finding by the jury that the horse's hoof had caught between the planking and the rail in a hole caused by want of proper repair. In view thereof there was no error in refusing to grant the motion to nonsuit, the rule being that a railroad company is liable for an injury resulting to a traveler from its failure to use reasonable care to keep the passageway over its tracks, maintained by it at a street intersection, in proper repair. *Sonns* v. *Erie Railroad Co.*, 37 *Vroom* 428; *affirmed,* 38 *Id.* 350.

We also think that the motion for a direction of a verdict for the defendant was properly denied.

Whether the horse's hoof was caught in the manner indicating lack of reasonable care on the part of the company in keeping the crossing in proper repair, as plaintiff contended, depended upon whether the plaintiff's witnesses were to be believed in the face of contradictory evidence given by the defendant's witnesses to the effect that the accident was caused by the calk of the horse's shoe being caught between the main rail and the guard rail of the "cross-frog" of standard pattern. This presented essentially a jury question which it was not error to leave to the jury. *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton,* 26 *Vroom* 342.

We have examined the other assignments of error and find no merit in them.

The result is that the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, J.J.   12.

*For reversal*—REED, PARKER, BERGEN, DILL, J.J.   4.