837 A.2d 1115 (2003)
365 N.J.Super. 1
Grace ATALESE and Vincent Atalese, husband and wife, Plaintiffs-Appellants,
v.
LONG BEACH TOWNSHIP and Long Beach Township Public Works Department, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 2003.
Decided December 15, 2003.
*1116 Michael W. Hoffman, Forked River, argued the cause for appellants (Stein, Supsie & Hoffman, attorneys; Mr. Hoffman, on the brief).
Robert E. Rue, Ship Bottom, argued the cause for respondents (Shackleton, Hazeltine & Bishop, attorneys; Mr. Rue, on the brief).
Before Judges KING, LINTNER and LISA.
The opinion of the court was delivered by LINTNER, J.A.D.
Plaintiffs, Grace Atalese and her husband Vincent,[1] appeal from an order granting summary judgment dismissing Grace's personal injury complaint against defendant Long Beach Township.[2] We reverse and remand for further proceedings. Because this appeal arises from the grant of a motion for summary judgment, "we must view the facts that may be inferred from the pleadings and discovery in the light most favorable to plaintiff[]." Strawn v. Canuso, 140 N.J. 43, 48, 657 A.2d 420 (1995).
On October 12, 1999, at approximately 7:00 a.m., plaintiff tripped and fell injuring herself while on the return leg of a "power walk" in Long Beach Township. At the time, she was proceeding on the east side of Beach Avenue, a one-way residential street, in a southerly direction facing traffic in a designated pedestrian-bicycle lane (bike lane). There were no sidewalks in the area. A sign installed by defendant warns pedestrians to walk facing traffic. As plaintiff watched a vehicle approach, she moved to the left and felt her foot go down on what she described as "a little uneven" portion of the pavement. She fell, hitting her head on the pavement. Photographs were taken of the area showing a significant rectangular portion of the pavement in the bike lane depressed for a distance of approximately one block as a result of apparent settling of a storm drain serviced by three storm grates. Although plaintiff does not know the exact location of her fall, two of the photographs show blood on the roadway adjacent to the bike lane where her head presumably hit the pavement.
Discovery from defendant revealed that its Department of Public Works installed a sewer extension over a period of two days in the late spring of 1999. The installation consisted of cutting and removing the asphalt, digging a trench, and laying down a sewer extension along Beach Avenue for one block between its intersections with Weldon Place and Nevada Avenue. According to defendant's maintenance supervisor, when the job was finished they placed tar at the site making the repaired area "slightly higher than the road area." An investigation by the maintenance supervisor one month after plaintiff's fall revealed that the area had "settled in some areas but not all." He ordered and applied additional tar.
*1117 In a report submitted to plaintiff by John Toto, a professional engineer, Toto found from his review of plaintiff's pictures that the depression in the area where plaintiff fell was approximately three-quarters of an inch.[3] He cited to CABO/ANSI standards, which require edge treatment when changes in level are greater than one-quarter of an inch. He determined that the settlement of the pavement occurred because "the [backfilled] soil was improperly compacted or the bituminous paved surface was not properly rolled." He concluded that defendant's public works department failed to follow proper construction procedures, which created a dangerous condition, specifically a tripping hazard.
Relying upon unspecified case law, the judge found that a three-quarter inch difference in elevation in the pavement did not constitute a substantial risk of harm to qualify as a dangerous condition under the Tort Claims Act. In reaching his determination the judge stated, "as the case law has noted, bumps and dips are common in the roadway and travelers should expect them."
On appeal, defendant argues, as it did before the motion judge, that there is no proof in the record that it had actual or constructive knowledge of the condition. It maintains that no one reported the condition and it did not learn that the pavement settled until one month after the accident. Defendant's contention is misplaced. The liability provisions of N.J.S.A. 59:4-2 state:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. A public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
[N.J.S.A. 59:4-2a and b. (Emphasis added.) ]
N.J.S.A. 59:4-3, which defines actual and constructive notice, is expressly limited to a "dangerous condition within the meaning of subsection b of section 59:4-2." Thus, the notice provisions are not applicable where public employees through neglect or wrongful act or omission within the scope of their employment create a dangerous condition. Here, plaintiff alleges that defendant's own public works department employees created the dangerous condition by negligently installing the storm sewer extension in question. Because plaintiff's case rests on subsection a. of N.J.S.A. 59:4-2, the notice provisions of N.J.S.A. 59:4-3 are not triggered.
Relying on Polyard v. Terry, 160 N.J.Super. 497, 390 A.2d 653 (App.Div.1978), aff'd 79 N.J. 547, 401 A.2d 532 (1979), defendant also asserts that the condition complained of was minor, trivial, and insignificant and, therefore, the judge correctly determined the condition, a three-quarter of an inch differential, did not constitute a dangerous condition as a matter of law. We again reject defendant's contention. N.J.S.A. 59:4-1a defines a *1118 dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." [N.J.S.A. 59:4-1a. (Emphasis added.) ]
We agree that to be considered a "substantial risk of injury" a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property to determine whether the condition creates a substantial risk of injury and, therefore, qualifies under the statute as dangerous. In Polyard, supra, 160 N.J.Super. at 503, 390 A.2d 653, there was a three-eighths of an inch differential in the pavement where Route 4 met the Hackensack River Bridge allegedly causing the codefendant's vehicle to lose control, cross the centerline and collide with the vehicle occupied by the plaintiffs. Noting that "[t]ravelers on highways must expect some declivities and some areas of imperfect surfaces," the Court found that the condition did not present a substantial risk of injury to the occupants of the plaintiff's vehicle. Polyard was concerned with significant risk to vehicular traffic, not pedestrians.
Here, by contrast, the differential in pavement was on an area of the roadway designated for pedestrians and bicyclists. As such, the reasonably foreseeable users include walkers, runners, and all types of bicyclists. Given these anticipated uses, we conclude that a three-quarter inch difference in the level of the pavement occupying a significant portion of a bike lane and spanning an entire block could be accepted by a jury as creating a substantial risk of injury and hence a dangerous condition under the Tort Claims Act. Accordingly, we are constrained to reverse and remand for further proceedings.
Reversed and remanded.
NOTES
[1] As Grace Atalese suffered the accident and asserted injury, we refer to her as "plaintiff."
[2] The Long Beach Township Public Works Department is also named as a defendant, however, it is not a separate public entity but a department of Long Beach Township. We therefore refer to defendant Long Beach Township as the only defendant.
[3] The differential in pavement was shown in the picture to be equal to the diameter of a penny.