27 A.3d 1253 (2011)
422 N.J. Super. 253
Elizabeth TYMCZYSZYN, Plaintiff-Appellant,
v.
COLUMBUS GARDENS, Hoboken Housing Authority, Defendant-Respondent.
No. A-3544-09T4
Superior Court of New Jersey, Appellate Division.
Argued November 4, 2010.
Decided September 30, 2011.
*1254 Charles F. Kenny, River Edge, argued the cause for appellant (LoPiano Kenny & Stinson, attorneys; Mr. Kenny, on the brief).
Robert J. Hitscherich, Hackensack, argued the cause for respondent (Zisa & Hitscherich, attorneys; Mr. Hitscherich, on the brief).
Before Judges FUENTES, GILROY and NUGENT.
The opinion of the court was delivered by
FUENTES, J.A.D.
Plaintiff Elizabeth Tymczyszyn slipped on ice and fell on the sidewalk abutting Columbus Gardens, a multi-unit residential property owned and operated by defendant Hoboken Housing Authority. Plaintiff sued defendant to recover damages for injuries she sustained as a result of the fall. The trial court granted defendant's summary judgment motion based on the immunity conferred upon public entities under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Specifically, the court found plaintiff did not establish that defendant created the dangerous condition that caused her to fall, N.J.S.A. 59:4-2(a), or had actual or constructive notice of the condition prior to the accident, N.J.S.A. 59:4-2(b). The court also found the actions taken by defendant in connection with the removal of ice and snow from the sidewalk were not "palpably unreasonable." Ibid.
Plaintiff now appeals, arguing the court erred in granting defendant's summary judgment motion because she presented sufficient evidence to create a triable question of fact as to each of these key determinations. Defendant not only argues the trial court correctly decided these issues as a matter of law, but maintains it is also immune from liability under *1255 the immunity conferred by the common law for snow removal activities and the weather-immunity provision in N.J.S.A. 59:4-7.[1]
After reviewing the record before us and considering all of the salient facts in the light most favorable to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A2d 146 (1995); R. 4:46-2(c), we reverse. Plaintiff presented sufficient evidence from which a jury could find that the manner in which defendant removed snow and ice from the area in question created the dangerous condition that caused her injury. Alternatively, a jury could find defendant was constructively on notice of this dangerous condition. Under either scenario, there is sufficient evidence from which a jury could find that defendant's failure to avoid this dangerous condition was palpably unreasonable. Finally, we reject defendant's argument based on the common law immunity for snow removal activities and the weather-immunity provision in N.J.S.A. 59:4-7.
We gather the following facts from the record developed before the trial court.

I
On February 21, 2007, at approximately 8:00 a.m., plaintiff was walking to the bus stop on her way to work. When she reached the sidewalk abutting defendant's property, her right foot slipped on a patch of ice, causing her to fall to the ground. Plaintiff estimated the icy surface "went at least halfway, if not like two-thirds across" the sidewalk.
Hoboken Police Officer Keith Rotondi responded to the scene of the accident and authored a report documenting the event. He described the area where plaintiff fell as "the south east corner of 9th and Jefferson Street approximately 10ft. from the curb." He noted "a pathway that was cleared of snow that had accumulated the day before, but due to warm temperatures over night, and then . . . becoming cold again, a thin sheet of ice was formed."
According to CompuWeather[2] reports, snow fell on February 14, 2007 (one week before the accident), and left an accumulation of 3.1 inches. Two inches of snow were on the ground on February 16, 2007, and February 17, 2007, and one inch of snow fell on each of the three days before the accident. Plaintiff's meteorological report indicated, within a reasonable degree of meteorological certainty, that on the day and time of the accident there was an approximate trace of less than half an inch of "snow and ice cover [ ] present on exposed, untreated, undisturbed outdoor surfaces in the vicinity of [defendant's property.]" Daily temperature readings from February 15 through the day before the accident fluctuated from below freezing levels to above freezing levels. The minimum temperature the day before the accident was twenty-seven degrees;[3] the maximum temperature for this same day reached forty-seven degrees. It was thirty-seven to forty degrees at the time of the accident.
Plaintiff's proofs in opposition to defendant's motion for summary judgment also included excerpts from the deposition testimony of defendant's maintenance supervisor Thomas Preston. According to Preston, *1256 the Housing Authority did not have a written policy or protocol concerning snow removal. The "usual" procedure included using shovels, plows, and snow-blowers to remove the snow, followed by spreading calcium chloride as a deicing agent.
Of particular relevance here, Preston testified that, on occasions, the maintenance crew also used a mini-bulldozer known as a Bobcat. The Bobcat uses a blade that does not scrape or touch the ground. Through the use of these tools (snow-blowers, plows, and Bobcat), the maintenance crew creates a four-foot pathway on the sidewalk, leaving snow piles bordering each side. The path is then deiced and attendants use shovels to clear any spot that may have been missed. According to Preston, defendant has used this unwritten procedure during his thirty-eight-year tenure with defendant.
Plaintiff's engineering expert, Ronald L. Saxon, opined that this procedure permits the snow piles that border the pathway to melt when temperatures temporarily rise. The melting snow refreezes when temperatures fall. Based on temperature reports indicating ground temperatures were at or below freezing at least four hours before the accident, the expert concluded that any snow that may have melted when the temperature rose to forty-seven degrees on the day before the accident likely reformed as ice overnight. According to Saxon, this dynamic was readily foreseeable and could have been easily avoided by defendant.
Based on this evidence, the court found that
a reasonable fact finder would certainly be able to determine if there was a dangerous condition in existence based on nothing else other than Officer Rotundi's report who reported to the scene and confirmed that there was a "thin sheet of ice" formed on the sidewalk.
Therefore I think it's undisputable that there was a dangerous condition in existence at the time of the accident.
Building upon this finding, the court addressed the applicability of N.J.S.A. 59:4-2(a), which renders a public entity liable if the dangerous condition was created by the negligent, wrongful acts, or omissions of its employees acting within the scope of their employment. The court rejected plaintiff's argument that defendant created the dangerous condition by using the Bobcat to clear the snow thereby causing "borders [to form] on either side of the sidewalk." Characterizing the argument as "very creative," the court nevertheless did not find legal support for obligating a public entity to remove the snow, as opposed to moving it or plowing it in a manner that creates a snow-free pathway. In support of this conclusion, the court relied on the Hoboken snow removal ordinance section 168.8 A, which states:
The owner or occupant or person having charge of any dwelling house, store or other building or lot of ground in the city shall, within the first six (6) hours after every fall of snow or hail, or after the formation of any ice upon the sidewalks, unless the ice is covered with sand or ashes, cause the snow and ice to be removed from the sidewalk abutting such dwelling house, store, building or lot of land and piled not more than eighteen (18) inches from the curbline into the public street or roadway.[4]
*1257 The court next addressed the concept of constructive notice under N.J.S.A. 59:4-2(b). After reviewing a number of cases that discussed this issue, the court found defendant did not have constructive notice of this dangerous condition "because there was insufficient evidence to show that given the air temperatures, ground temperatures notwithstanding, that [defendant] knew or should have known that the icy condition was going to form or that it did form." Under these circumstances, the court found the procedure employed by defendant was not palpably unreasonable.
Although it noted the relevance of Bligen v. Jersey City Housing Authority, 131 N.J. 124, 129, 619 A.2d 575 (1993), the court did not base it decision on the common law immunity for snow removal activities or the weather-immunity provision in N.J.S.A. 59:4-7.
Finally, although not discussed in much detail, citing Gilhooley v. County of Union, 164 N.J. 533, 542-43, 753 A.2d 1137 (2000), the court found plaintiff presented sufficient evidence to overcome the injury threshold under N.J.S.A. 59:9-2(d).[5]

II

A
We begin our analysis by reaffirming the standards governing the review of a motion for summary judgment. A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).
A trial "court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a genuine issue as to any material fact challenged." Brill, supra, 142 N.J. at 529, 666 A.2d 146. To determine whether a genuine issue of material fact exists, the trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540, 666 A.2d 146. "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). We review an order granting summary judgment by employing the same standard of review used by the trial court. Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J.Super. 219, 228, 976 A.2d 444 (App.Div.2009).

B
The question here concerns the immunity provided to public entities under *1258 the TCA. As a starting point, we agree with the trial court's implicit ruling that defendant, although a public entity, is not entitled to invoke the weather condition immunity in N.J.S.A. 59:4-7, or the common law immunity for snow related activities under Miehl v. Darpino, 53 N.J. 49, 54, 247 A.2d 878 (1968). With respect to N.J.S.A. 59:4-7, which grants public entities and public employees immunity "for an injury caused solely by the effect on the use of streets and highways of weather conditions," (emphasis added), the Supreme Court made clear in Bligen that the statutory terms limiting immunity to accidents that occur on a "street" or "highway" do not provide immunity for an accident that occurs on a driveway of a housing authority. Supra, 131 N.J. at 129, 619 A.2d 575. The same logic excludes "sidewalks" as places to which the immunity provision applies under N.J.S.A. 59:4-7.
We recognize that the Court in Bligen referred to the definition of "street" used in the Municipal Land Use Law, N.J.S.A. 40:55D-7, which "may comprise pavement, shoulders, gutters, curbs, sidewalks, parking areas and other areas within the street line." Bligen, supra, 131 N.J. at 129-130, 619 A.2d 575. We are nevertheless certain that our holding here is not inconsistent with the thrust of the Court's reasoning in Bligen.
Citing Pico v. State, 116 N.J. 55, 560 A.2d 1193 (1989), the Bligen Court emphasized that the weather-immunity provision in N.J.S.A. 59:4-7 was intended to avoid "the potential unlimited liability that could arise if municipalities had to compensate every person injured from ice and snow on the State's hundreds of miles of streets and highways." Id. at 131, 619 A.2d 575. This conclusion was grounded in the practical reality that the State cannot be "everywhere immediately following a snow storm." Ibid. Under the circumstances we confront here, it is not unreasonable to expect the management of a public housing complex to be able to remove snow and ice from the limited area of an abutting sidewalk. In short, none of the public policy concerns or practical considerations underpinning the Court's decision in Pico are applicable here.
Defendant nevertheless emphasizes that the plaintiff in Bligen was the tenant of the defendant housing authority. In this context, public landlords owed the same standard of care to their tenants under the common law that applied to commercial landlords. Bligen, supra, 131 N.J. at 134, 619 A.2d 575. Citing Lathers v. Township of West Windsor, 308 N.J.Super. 301, 705 A.2d 1259 (App.Div.1998), and Rossi v. Borough of Haddonfield, 297 N.J.Super. 494, 688 A.2d 643 (App.Div.1997), defendant argues that the absence of a landlord tenant relationship in this case renders the holding in Bligen inapplicable.
We disagree. In Lathers, the plaintiff fell on a patch of ice on the sidewalk connecting a township's municipal building complex to a parking lot. Supra, 308 N.J.Super. at 303, 705 A.2d 1259. The Lathers panel determined that the "essence" of Bligen was the standard of care owed by landlords to their tenants under the common law, regardless of whether the landlord was a commercial enterprise or a public entity. Id. at 306, 705 A.2d 1259. Thus, without a landlord-tenant relationship, immunity must apply. Ibid.
Lathers relied on Rossi, which involved a slip-and-fall accident on a patch of ice in a municipal parking lot. Rossi, supra, 297 N.J.Super. at 496, 688 A.2d 643. The defendant in Rossi was the Borough of Haddonfield, the kind of municipal defendant that could be exposed to limitless liability if immunity were not extended for snow removal activities. Id. at 501, 688 A.2d *1259 643. We also rejected the plaintiff's argument that there was a landlord-tenant relationship between herself and the Borough, because "no landlord-tenant relationship [is] created by the Borough regulating parking through meters and permits." Ibid.
However, we do not construe our holdings in Lathers and Rossi to require the existence of a landlord-tenant relationship as an indispensable prerequisite for overcoming the common law immunity for snow removal activities. Most importantly, nothing in Bligen indicates that the Supreme Court intended such a narrow view of its holding. As the following passage illustrates, the Court in Bligen incorporated and applied to public landlords the same tort liability long-held applicable to commercial landlords:
The drafters of the Tort Claims Act cautioned us about accepting "novel causes of action." Comment, N.J.S.A. 59:2-1. However, imposing liability on a housing authority that failed to use due care to safeguard its premises is not novel. Rather, it follows the long tradition in the common law of holding municipal landlords responsible for the reasonably-foreseeable consequences of their actions.
The law imposing tort liability on municipal landlords has been well established in New Jersey for over thirty years. In Doud v. Housing Authority of Newark, 75 N.J.Super. 340 [183 A.2d 149] (App.Div.1962), the court held that landlords had a duty to maintain the premises to prevent foreseeable injuries. Id. at 345 [183 A.2d 149]. The court made no distinction between municipal landlords and commercial landlords. See also Hedges v. Housing Auth. of Atlantic City, 21 N.J.Super. 167 [91 A.2d 88] (App.Div. 1952) (holding that housing authority had duty to use due care to prevent invitee's injury on passageway; no distinction made between public and private landlords).
. . . .
Thus, under the common law, courts imposed tort liability on municipal housing authorities, despite the argument that their governmental nature rendered them immune. Like those courts, we find no reason to treat public landlords differently from other commercial landlords.
[Bligen, supra, 131 N.J. at 134-36, 619 A.2d 575 (emphasis added).]
Given the well-established duty owed by commercial landlords to pedestrians to keep the sidewalk abutting their property free of snow and ice, Luchejko, supra, 207 N.J. at 203, 23 A.3d 912 (2011) (citing Mirza v. Filmore Corp., 92 N.J. 390, 395-96, 456 A.2d 518 (1983)), we hold defendant cannot escape liability here under the common law immunity for snow removal activities.

C
We turn next to the questions of notice under the TCA. The requirement that a public entity have actual or constructive notice of a dangerous condition is "not applicable where public employees through neglect or wrongful act or omission within the scope of their employment create a dangerous condition." Atalese v. Long Beach Twp., 365 N.J.Super. 1, 5, 837 A.2d 1115 (App.Div.2003); N.J.S.A. 59:4-2(a). Whether a public employee created a dangerous condition through negligent acts or omissions may be an issue of fact that must be decided by a jury.
In Atalese, the plaintiff fell on uneven pavement in a pedestrian-bicycle lane. Supra, 365 N.J.Super. at 3, 837 A.2d 1115. The pavement where the plaintiff was walking had become uneven because the *1260 municipality had cut and removed the asphalt to dig a trench and lay down a sewer pipe, and then had re-tarred the area in a way that resulted in the asphalt becoming uneven. Id. at 4, 837 A.2d 1115. The users of the pavement were almost exclusively runners, walkers, and bikers. Id. at 6, 837 A.2d 1115. In this context, we held a rational jury could find the uneven pavement was a dangerous condition created by the municipality, and thus reversed the trial court's order granting summary judgment to the defendant public entity. Ibid.
Here, a jury can find the dangerous icy condition that caused plaintiff to fall was created by defendant's negligent accumulation of snow on either side of the pathway, thus giving rise to the foreseeable risk that melting snow would refreeze into a patch of ice. Given the description of the sidewalk at the time of the accident provided by both plaintiff and Officer Rotondi, a jury can find defendant either did not use, or did not use enough, deicing material to prevent the melting snow from refreezing. Alternatively, a jury can rely on the opinions of plaintiff's expert witnesses to find defendant was constructively on notice of this dangerous condition.
We next consider whether defendant's actions under these circumstances were palpably unreasonable. Whether a public entity's actions were "palpably unreasonable" "is a jury question . . . except in cases where reasonable [persons] could not differ." Polyard v. Terry, 148 N.J.Super. 202, 218, 372 A.2d 378 (Law Div.1977), rev'd on other grounds, 160 N.J.Super. 497, 390 A.2d 653 (App.Div.1978), aff'd o.b., 79 N.J. 547, 401 A.2d 532 (1979). Based on the evidence presented, including the deposition testimony of defendant's maintenance supervisor, a jury can find defendant was palpably unreasonable in failing to ensure the sidewalk was free of snow and ice at a time of the morning when it is highly likely to expect pedestrian traffic.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] As a respondent, defendant can raise alternative arguments in support of the trial court's judgment. Chimes v. Oritani Motor Hotel, Inc., 195 N.J.Super. 435, 443, 480 A.2d 218 (App.Div.1984).
[2] An internet website offering site-specific historical weather reports and analysis. COMPUWEATHER, http://compuweather.com (last visited Sept. 20, 2011).
[3] Temperature readings are based on the Fahrenheit scale.
[4] In the interest of clarity, we reject any implication that deviating from the requirements of the municipal ordinance creates a private right of action to plaintiff. Luchejko v. City of Hoboken, 207 N.J. 191, 200, 23 A.3d 912 (2011) (citing Fielders v. N. Jersey St. Ry. Co., 68 N.J.L. 343, 352, 53 A. 404 (E. & A. 1902)).
[5] Plaintiff suffered a dislocation and fracture of her ankle that required a total of three surgeries to correct. The first surgery involved the removal of bone fragments and the placement of orthopedic plates and screws to stabilize the ankle during the healing process. A second surgery was required to remove a large surgical screw that had been embedded in her leg. A third surgery took place on December 2008 to remove additional orthopedic hardware and to increase the range of motion. Plaintiff's ankle was either totally immobilized by a cast or partially restrained by an orthopedic boot during most of this time. She also received intense physical therapy to aid in her recovery. She was diagnosed by a neurologist with permanent nerve damage in her foot. Her movements and activities have been significantly restricted and she continues to experience intermittent pain and discomfort.