NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4784-15T4

MATCHAPONIX ESTATES, INC.
and NCV DEVELOPERS,

 Plaintiffs-Respondents,

v.

FIRST MERCURY INSURANCE COMPANY,

 Defendant-Appellant.
_________________________________

 Argued May 24, 2017 – Decided July 10, 2017

 Before Judges Manahan and Lisa.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Docket No. L-
 4399-15.

 Daniel Pickett argued the cause for appellant
 (Carroll, McNulty & Kull, LLC, attorneys;
 Kristin V. Gallagher and Mr. Pickett, of
 counsel and on the briefs).

 David M. Hutt argued the cause for respondents
 (Hutt & Shimanowitz, P.C., attorneys; Mr. Hutt
 and Bryan D. Plocker, of counsel and on the
 brief).

PER CURIAM

 In this insurance coverage dispute, First Mercury Insurance

Company (First Mercury) appeals from an order denying its motion
for summary judgment, as well as a second order granting summary

judgment in favor of Matchaponix Estates, Inc. (Matchaponix) and

NCV Developers (NCV). We affirm.

 We discern the following facts and all reasonable inferences

drawn therefrom in the light most favorable to the party against

whom summary judgment was entered. Brill v. Guardian Life Ins.

Co. of Am., 142 N.J. 520, 523-24 (1995). The underlying personal

injury action involves Jeannine Bleich, who claimed to be injured

while riding her bicycle along the roadway in a development built

by Matchaponix and NCV. Bleich attributed her accident and

resulting injury to a sinkhole, which caused her to be propelled

forward onto the pavement.

 In November 2014, Bleich and her husband filed a complaint

naming NCV as a defendant. The complaint was thereafter amended

to add Matchaponix as a defendant. The complaint alleged

Matchaponix and NCV were negligent in their management and

maintenance of the development.

 At the time of the accident, Matchaponix and NCV were insured

under a commercial general liability policy (CGL) issued by First

Mercury. The CGL included an endorsement-subsidence exclusion,

which provided,

 This insurance does not apply to:

 2 A-4784-15T4
 "Bodily injury" or "property damage"
 directly or indirectly arising out of[,]
 caused by, resulting from, contributed to,
 aggravated by or related to the subsidence,
 settling, settlement, expansion, sinking,
 slipping, falling away, tilting, caving in,
 shifting[,] eroding, rising, heaving,
 landslide, flood or mud flow, earthquake,
 volcanic eruption or other tectonic processes
 or any other movement, of land or earth,
 however caused, and whether by natural,
 manmade, accidental or artificial means. This
 exclusion applies regardless of any other
 cause or event that contributes concurrently
 or in any sequence to the "bodily injury" or
 "property damage."

 We shall have no duty or obligation on
 our part under this insurance to defend,
 respond to, investigate or indemnify any
 insured against any loss, claim, "suit," or
 other proceeding alleging damages arising out
 of or related to "bodily injury" or "property
 damage" to which this endorsement applies.

 This exclusion also applies to any
 obligation to, share damages with, repay or
 indemnify someone else who must pay damages
 because of such "bodily injury" or "property
 damage."

 In response to the underlying action, Matchaponix and NCV

submitted a claim to First Mercury.1 By letter dated January 8,

2015, First Mercury disclaimed coverage based on the CGL's

subsidence exclusion provision.

1
 Matchaponix and NCV filed a claim prior to the commencement of
the underlying action for which First Mercury denied coverage.

 3 A-4784-15T4
 In July 2015, Matchaponix and NCV commenced a declaratory

judgment action. First Mercury filed its answer and affirmative

defenses in September 2015. Matchaponix and NCV, as well as First

Mercury, simultaneously filed motions for summary judgment. On

April 27, 2016, the trial court issued a preliminary ruling on the

parties' motions granting summary judgment in favor of Matchaponix

and NCV.

 At the conclusion of oral argument held on May 6, 2016, the

court granted Matchaponix and NCV's motion for summary judgment

and denied First Mercury's motion for summary judgment. On the

same day, the court entered orders memorializing its decision.

The orders stated in part:

 2. First Mercury shall pay on behalf of
 Matchaponix and NCV all sums that Matchaponix
 and/or NCV become legally obligated to pay,
 through judgment settlement or otherwise, in
 connection with the [Underlying Litigation;]

 3. First Mercury shall pay on behalf of
 Matchaponix and NCV all costs, including
 attorneys' fees, and related litigating
 expenses that Matchaponix and NCV incur in the
 defense of the Underlying Litigation;

 The court entered a consent order for final judgment in

connection with its summary judgment rulings on June 9, 2016.

Pursuant to the order, the parties agreed upon the amount of legal

fees incurred by Matchaponix and NCV, totaling $37,927.94. The

 4 A-4784-15T4
order reserved First Mercury's right to appeal the May 6, 2016

orders. This appeal followed.

 First Mercury raises the following argument on appeal:

 [POINT I]

 THE TRIAL COURT IMPROPERLY LIMITED THE
 APPLICATION OF THE SUBSIDENCE EXCLUSION TO
 "CATASTROPHIC" EVENTS.

 A. STANDARD OF REVIEW.

 B. THE PLAIN TERMS OF THE SUBSIDENCE
 EXCLUSION DOES NOT LIMIT ITS
 APPLICATION TO "CATASTROPHIC"
 EVENTS.

 C. THE SUBSIDENCE EXCLUSION
 PRECLUDES COVERAGE FOR NCV
 DEVELOPERS AND MATCHAPONIX.

 D. THE SUBSIDENCE EXCLUSION IS
 UNAMBIGUOUS.

First Mercury raises the following argument in its reply brief:

 [POINT I]

 LEGAL ARGUMENT.

 A. THE SUBSIDENCE EXCLUSION
 PRECLUDES COVERAGE FOR THE
 UNDERLYING ACTION.

 B. COURTS HAVE FOUND THE SUBSIDENCE
 EXCLUSION TO BE UNAMBIGUOUS AND
 ENFORCEABLE AND THE TRIAL COURT AND
 [MATCHAPONIX AND NCV] FAILED TO CITE
 TO ANY CASE HOLDING TO THE CONTRARY.

 C. [MATCHAPONIX AND NCV'S] READING
 OF THE EXCLUSION RENDERS ITS TERMS
 MEANINGLESS AND INEXPLICABLE.

 5 A-4784-15T4
 D. [MATCHAPONIX AND NCV] PROVIDE NO
 EVIDENTIARY SUPPORT OF WHAT THEIR
 EXPECTATIONS WERE.

 E. THE SUBSIDENCE EXCLUSION IS NOT
 RENDER AMBIGUOUS BECAUSE IT MIGHT
 NOT APPLY TO A HYPOTHETICAL,
 ALTERNATIVE SITUATION.

 F. BASED UPON THE ALLEGATIONS OF THE
 COMPLAINT[,] FIRST MERCURY HAD NO
 DUTY TO DEFEND.

 Our review of a ruling on summary judgment is de novo,

applying the same legal standard as the trial court. Coyne v.

N.J. Dep't of Transp., 182 N.J. 481, 491 (2005); Tymczyszyn v.

Columbus Gardens, 422 N.J. Super. 253, 261 (App. Div. 2011),

certif. denied, 209 N.J. 98 (2012). Thus, we consider "whether

the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." Liberty Surplus Ins. Corp. v.

Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill,

supra, 142 N.J. at 536). "Summary judgment must be granted if

'the pleadings, depositions, answers to interrogatories[,] and

admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact challenged

and that the moving party is entitled to a judgment or order as a

matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013)

(quoting R. 4:46-2(c)).

 6 A-4784-15T4
 Here, the factual record is not in dispute. If there is no

genuine issue of material fact, we must then "decide whether the

trial court correctly interpreted the law." Massachi v. AHL

Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), certif.

denied, 195 N.J. 419 (2008). We review de novo the trial court's

legal determinations, including its construction of an insurance

contract. Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J.

Super. 241, 260 (App. Div. 2008), certif. denied, 199 N.J. 133

(2009).

 Matchaponix and NCV's expert's opinion was undisputed. See

D'Alessandro v. Hartzel, 422 N.J. Super. 575, 581 (App. Div. 2011)

(requiring expert testimony concerning construction or design

defects). The expert opined that that this sinkhole was caused

by underground leakage from a storm-water pipe leading to a nearby

inlet installed by Matchaponix and NCV. First Mercury did not

present its own expert. As such, the only issue on appeal before

us is the trial court's interpretation of the CGL and whether this

condition falls within the subsidence exclusion.

 The interpretation of an insurance policy upon established

facts is a question of law for the court to determine. Simonetti

v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004).

Our standard of review is plenary. Manalapan Realty, L.P. v. Twp.

Comm. of Manalapan, 140 N.J. 366, 378 (1995). "Generally, '[w]hen

 7 A-4784-15T4
interpreting an insurance policy, courts should give the policy's

words their plain, ordinary meaning.'" Nav-Its, Inc. v. Selective

Ins. Co. of Am., 183 N.J. 110, 118 (2005) (quoting President v.

Jenkins, 180 N.J. 550, 562 (2004)). "An insurance policy is a

contract that will be enforced as written when its terms are clear

in order that the expectations of the parties will be fulfilled."

Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (citing Kampf

v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)).

 In construing the CGL, the court held:

 To determine the cause of the hole
 . . ., [Matchaponix and NCV] retained an
 expert, who concluded that "[b]ased on the
 location of the pavement failure and the shape
 of the hole, it is our opinion, based on a
 reasonable degree of engineering certainty,
 that the formation of the hole is attributed
 to a loss of support from soil migration into
 a potential break or crack within the [storm-
 water] pipe below the area of interest. The
 pavement failure is, based on a reasonable
 degree of engineering certainty, the result
 of a construction related deficiency in the
 utility installation." Notably, First Mercury
 admits that it has not retained an expert to
 contradict [] the opinions of [Matchaponix and
 NCV's] expert.

 Matchaponix and NCV argue that First
 Mercury should be required to defend and
 indemnify them under the [CGL] because Bleich
 alleges bodily injuries resulting from riding
 her bicycle into a hole in [the] roadway
 caused by a construction-related deficiency.
 Because the hole was not caused by the
 subsurface movement of the Earth, such as a
 tectonic shift of the plates, the Subsidence

 8 A-4784-15T4
 Exclusion of the [CGL] is not applicable, and
 to the extent that the exclusion is
 applicable, that provision is ambiguous, thus
 requiring those doubts to be resolved in favor
 [of] the insured.

 . . . .

 The language of the Subsidence Exclusion
 plainly envisions a scenario in which solid
 Earth collapses downward because of a natural
 occurrence, such as a floor or an earthquake,
 or human activities, such as industrial mining
 or ground water pumping. It is abundantly
 clear that the exclusion does not apply to a
 scenario in which solid Earth seeps into a
 break or crack in a [storm-water] pipe
 resulting from a construction related
 deficiency, thus causing a hole in the
 pavement of a roadway. To conclude otherwise
 would lead to [a] jarringly anomalous result,
 running contrary to the fundamental principles
 of fairness and common sense. Because
 [Matchaponix and NCV's] expert has opined that
 the pavement failure is the result of a faulty
 installation of the [storm-water] pipe below
 [the roadway], which is neither disputed nor
 refuted by First Mercury, the Subsidence
 Exclusion does not apply, and thus,
 [Matchaponix and NCV] are entitled to coverage
 under the [CGL], and reimbursement for monies
 expended in their defense.

While we affirm the order of summary judgment in favor of

Matchaponix and NCV, we do so for different reasons than those

articulated by the court. Because we review judgments, not

decisions, we may affirm on any ground. Serrano v. Serrano, 367

N.J. Super. 450, 461 (App. Div. 2004) (quoting Isko v. Planning

Bd. of Livingston Twp., 51 N.J. 162, 175 (1968)) ("Although we

 9 A-4784-15T4
affirm for different reasons, a judgment will be affirmed on appeal

if it is correct, even though 'it was predicated upon an incorrect

basis.'"), rev'd on other grounds, 183 N.J. 508 (2005).

 Exclusions in insurance policies are construed narrowly.

Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997). They

will be enforced if the language is "specific, plain, clear,

prominent, and not contrary to public policy." Ibid. (quoting

Doto v. Russo, 140 N.J. 544, 559 (1995)). Because an insurance

policy is a contract of adhesion, ambiguous policy language is

interpreted in favor of the insured to give effect to the insured's

reasonable expectations. Doto, supra, 140 N.J. at 555-56.

Ambiguity is present when "the phrasing of the policy is so

confusing that the average policyholder cannot make out the

boundaries of coverage." Nunn v. Franklin Mut. Ins. Co., 274 N.J.

Super. 543, 548 (App. Div. 1994) (quoting Weedo v. Stone-E-Brick,

Inc., 81 N.J. 233, 247 (1979)). On numerous occasions, our courts

have resolved unclear policy language in favor of the insured.

See, e.g., Sparks v. St. Paul Ins. Co., 100 N.J. 325, 336 (1985);

Search EDP, Inc. v. Am. Home Insurance, 267 N.J. Super. 537, 542

(App. Div. 1993), certif. denied, 135 N.J. 466 (1994); and

Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273-74 (2001).

 However, "[i]f the words used in an exclusionary clause are

clear and unambiguous, 'a court should not engage in a strained

 10 A-4784-15T4
construction to support the imposition of liability.'"

Flomerfelt, supra, 202 N.J. at 442 (quoting Longobardi v. Chubb

Ins. Co., 121 N.J. 530, 582 (1990)). "[T]he burden is on the

insurer to bring the case within the exclusion." Ibid. (quoting

Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998)).

 We have also extended coverage where the language is

unambiguous, but the denial of coverage would frustrate the

insured's reasonable expectations. Sparks, supra, 100 N.J. at

338. Thus, even when the policy language is clear, but denial of

coverage contravenes the insured's reasonable expectations, our

courts have ruled for the insured.

 In Werner Industries, Inc. v. First State Insurance. Co., 112

N.J. 30 (1988), our Supreme Court explained the underlying

rationale for the reasonable expectations doctrine. That doctrine

is triggered despite unambiguous language where "the insurance

contract is inconsistent with public expectations and commercially

accepted standards." Id. at 35 (quoting Sparks, supra, 100 N.J.

at 338). In such instances, "judicial regulation of insurance

contracts is essential in order to prevent overreaching and

injustice." Ibid. (quoting Sparks, supra, 100 N.J. at 338).

 We disagree with the court that the exclusion language was

ambiguous. From our reading of the CGL language, its literal

language plainly excludes from coverage any losses from the

 11 A-4784-15T4
movement of land or earth "however caused, and whether by natural,

manmade, accidental or artificial means." By its literal terms,

the subsidence exclusion's application is not limited, as the

court determined, to soil migration by natural causes. Here, the

factual predicate for the occurrence was the manmade movement of

earth. Despite our finding as to the issue of ambiguity, our

determination as to whether the exclusionary language should be

applied does not end here. Id. at 35 (quoting Sparks, supra, 100

N.J. at 338).

 We next turn to the issue of the reasonable expectations of

Matchaponix and NCV. Ibid. In doing so, we apply "an objective

standard of reasonableness" in determining what a policyholder's

reasonable expectations are. Clients' Sec. Fund of the Bar of

N.J. v. Sec. Title & Guar. Co., 134 N.J. 358, 372 (1993); see also

Progressive, supra, 166 N.J. at 274. Due to "the stark imbalance

between insurance companies and insureds in their respective

understanding of the terms and conditions of insurance policies[,]

. . . '[t]he objectively reasonable expectations of applicants and

intended beneficiaries regarding the terms of insurance contracts

will be honored even though painstaking study of the policy

provisions would have negated those expectations.'" Zacarias v.

AllState Ins. Co., 168 N.J. 590, 594-95 (2001) (quoting Sparks,

supra, 100 N.J. at 338-39).

 12 A-4784-15T4
 As the court noted at oral argument, by interpreting the

exclusion in the manner argued for by First Mercury, the exclusion

would apply to the mere act of putting a shovel in the ground,

digging a hole, and then failing to cover it up. The court held

that given the potential applicability of the exclusion to the

"shovel in the ground" occurrence, it rendered the exclusion

ambiguous. While, we disagree with the court's holding on the

issue of ambiguity, we conclude that the potential, if not actual,

applicability of the exclusion to such an occurrence would clearly

have not been aligned with the indemnity coverage that Matchaponix

and NCV believed they procured.2

 "[C]ourts have a special responsibility to prevent the

marketing of policies that provide unrealistic and inadequate

coverage." Sparks, supra, 100 N.J. at 341. This "unrealistically

narrow" interpretation of the subsidence exclusion would be

entirely in discord with Matchaponix and NCV's reasonable

expectations as land developers regarding the type of coverage

provided to them under the CGL. Ibid.

 Affirmed.

2
 First Mercury's counsel was non-committal in response to the
court's "shovel in the ground" hypothetical and its application
to the exclusion. We received a similar response from counsel
when we inquired about the "shovel in the ground" scenario during
oral argument.

 13 A-4784-15T4