**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1709-23

DAVID B. WILSON and
CHERYL WILSON, husband
and wife,

      Plaintiffs-Respondents,

v.

CITY OF NEWARK,

      Defendant-Appellant,

and

STATE OF NEW JERSEY and
NORFOLK SOUTHERN
CORPORATION,

      Defendants.

_____

Argued March 25, 2025 – Decided May 23, 2025

Before Judges Gilson, Bishop-Thompson, and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2081-17.

Christian R. Martinez argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; Raymond M. Brown, Jalen D. Porter, and Christian R. Martinez, on the briefs.)

Anthony Granato argued the cause for respondents (Jarve Granato Starr, LLC, attorneys; Anthony Granato, on the brief).

PER CURIAM

Plaintiff David B. Wilson drove a 13'6" high tractor trailer into a 12'2" high railroad bridge on Avenue P in the City of Newark (the City). Plaintiff and his wife sued the City, alleging that it was negligent in not posting and maintaining signs warning drivers of the height of the railroad bridge. The trial court denied the City's motions for summary judgment and directed verdicts under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Thereafter, a jury found the City negligent and awarded plaintiff $562,500 in damages.

The City now appeals from the orders denying its motion for summary judgment and its motions for directed verdicts. Because plaintiff failed to present evidence that the City created the dangerous condition or that it knew or should have known that a sign warning drivers about the height of the bridge was missing, and because there was no evidence that the City acted palpably unreasonably, we vacate the judgment and reverse the orders denying summary

judgment and directed verdicts to the City. We remand with direction that the trial court enter an order dismissing plaintiff's claims against the City with prejudice.

I.

On the morning of March 26, 2015, plaintiff was driving a tractor trailer in the City in the course of his employment for Performance Food Group. The trailer plaintiff was driving was 13'6" tall. As plaintiff drove the tractor trailer down Avenue P, the trailer struck a railroad bridge that was 12'2" above the avenue. The trailer became wedged beneath the bridge and plaintiff suffered personal injuries, including an injury to his neck that later required surgery.

On March 21, 2017, plaintiff and his wife sued the City, alleging that the City was negligent in "fail[ing] to post and maintain signs indicating the height of the railroad bridge."[1] The City filed an answer asserting, among other defenses, that it was immune from liability under the TCA.

During discovery, the City produced evidence that before the accident, it had posted a sign stating the height of the railroad bridge on Avenue P. The

---

[1] Plaintiff also originally sued the State of New Jersey and Norfolk Southern Corporation, the company that owned the railroad bridge. On June 7, 2019, the trial court granted summary judgment in favor of both those defendants. Plaintiff did not oppose those summary judgment motions, and he has not appealed from those orders.

A-1709-23

City also produced four work orders concerning that sign. The work orders were for work done in December 2011, June 2014, February 2015, and June 2015. The December 2011 and June 2014 work orders indicated that the City had been informed that the height sign on Avenue P had previously been knocked down. The February 2015 work order stated that the height sign on Avenue P was reported as knocked down on February 11, 2015, and reinstalled on February 17, 2015. There was also evidence that on March 26, 2015, the sign was missing. In that regard, a police report concerning the accident stated that no sign was posted on the date of the accident. The June 2015 work order stated that the sign was reported as knocked down on June 29, 2015, and reinstalled on July 1, 2015.

Following the close of discovery, the City moved for summary judgment. The City argued that plaintiff had not and could not establish that it was liable under the TCA. In support of its motion, the City relied on the February 2015 work order, which showed that on February 11, 2015 a citizen called the City to report a knocked down sign on Avenue P. The work order also stated that the sign, indicating the height of the railroad bridge to be 12'2", had been reinstalled on February 17, 2015.

A-1709-23

While acknowledging that the sign was missing on the date of the accident, the City argued that plaintiff had no evidence that the City knew or should have known that the sign was missing. In that regard, the City pointed out that the sign had been reinstalled on February 17, 2015, thirty-seven days before the accident on March 26, 2015. The City then argued that there was no evidence concerning when the sign was knocked down or taken away during those thirty-seven days. The City also argued that plaintiff had no liability expert to testify that the City acted palpably unreasonably in not properly maintaining the sign or not regularly inspecting the sign.

After hearing oral argument, on June 7, 2019, the trial court issued an order denying the City's summary judgment motion. The trial court reasoned that there were disputed issues of material fact concerning whether the City had constructive notice that the sign was missing.

The matter then proceeded to trial in November 2023. In an in limine motion prior to trial, the trial court granted the City's motion to exclude the June 2015 work order as evidence of a subsequent remedial measure. Consequently, at trial, plaintiff presented the three other work orders from December 2011, June 2014, and February 2015 to support his claim that the City had notice that the sign was missing. Plaintiff did not call an expert witness. Instead, plaintiff's

counsel argued that the City created the dangerous condition by not posting signs in compliance with N.J.S.A. 27:5G-4, a statute that requires responsible government entities to place signs denoting the maximum clearance near bridges that are lower than 14'6" above the underlying road.

At the close of plaintiff's case, the City moved for a directed verdict, contending that there was no evidence that it had actual or constructive notice that the sign was missing. The City also argued that there was no showing that its actions or inactions were palpably unreasonable. The trial court denied that motion, reasoning that there was sufficient evidence from which a reasonable jury could conclude that the City had constructive notice that the sign was missing prior to the accident.

The City then presented its case in defense. Following the close of all evidence, the City renewed its motion for a directed verdict. It again argued that there was no evidence establishing that it had actual or constructive knowledge that the sign was missing. In addition, the City contended that there was no showing that its actions or omissions were palpably unreasonable. The trial court denied the City's second motion for a directed verdict.

Thereafter, the jury returned a verdict in favor of plaintiff. In response to questions on the verdict sheet, the jury found that (1) the City's "actions or

6

failure to act create[d] a dangerous condition," (2) the City had "actual or constructive notice that a dangerous condition existed," (3) the City was negligent and its "negligence was a proximate cause of the accident," and (4) the City's "actions or non-actions [were] palpably unreasonable."

The jury also considered plaintiff's comparative negligence. The jury found that the City was seventy-five percent at fault for the accident and that plaintiff was twenty-five percent at fault. Accordingly, the jury awarded plaintiff $562,500 of the $750,000 in damages plaintiff suffered.

The City moved for a new trial, but on January 22, 2024, the trial court denied that motion. That same day, the trial court entered a judgment molding the jury's verdict.

The City now appeals from the trial court's (1) June 7, 2019 order denying its motion for summary judgment; (2) November 2, 2023 order denying its motion for a directed verdict; and (3) November 6, 2023 order denying its second motion for a directed verdict.

II.

On appeal, the City argues that the trial court erred in denying its motion for summary judgment and its motions for directed verdicts because plaintiff failed to show that the City knew or should have known that the sign was

missing. The City also argues that there was no evidence that it acted palpably unreasonably. In support of these arguments, the City contends that plaintiff failed to provide evidence as to the length of time the sign was missing. Additionally, the City asserts that plaintiff failed to prove its conduct was palpably unreasonable.

In response, plaintiff contends that the City created the dangerous condition by not posting signs in compliance with N.J.S.A. 27:5G-4. Thus, plaintiff argues that he did not need to show that the City knew of the dangerous condition because it created that condition. Alternatively, plaintiff argues that the City had constructive notice of the dangerous condition because the work orders "show[ed] the sign was not properly placed and not properly maintained." Plaintiff also argues that we should defer to the jury's verdict because the issues of the creation of the dangerous condition, the constructive notice of that condition, and whether the City was palpably unreasonable in acting or failing to act were all presented to and decided by the jury.

III.

Appellate courts review a denial of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511

(2019)).  Similarly, "[i]n reviewing a judge's denial of a motion for a directed verdict, we apply the same standard that governs the trial judge."  Carbajal v. Patel, 468 N.J. Super. 139, 157 (App. Div. 2021) (citing ADS Assocs. Grp. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014)).

The standards for summary judgment and a directed verdict are similar. In considering whether to grant summary judgment, a court must "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Similarly, when deciding a motion for a directed verdict, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Frugis v. Bracigliano, 177 N.J. 250, 269 (2003) (quoting Brill

v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)) (internal quotation marks omitted). "If, giving the [non-moving party] the benefit of the most favorable evidence and inferences to be drawn from that evidence, 'reasonable minds could differ' as to the outcome, the contested issues must be submitted to a jury." Id. at 269-70 (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)).

IV.

The City is a public entity that is liable for its negligence only to the extent permitted by the TCA. N.J.S.A. 59:1-2, 59:1-3, 59:2-1(a); see Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 452 (2009) (applying the TCA to a claim brought against the City of Trenton). The TCA waives a public entity's sovereign immunity but does so with certain requirements and limitations. See N.J.S.A. 59:1-2 (explaining that "public entities shall only be liable for their negligence within the limitations of" the TCA). "Generally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999) (citing N.J.S.A. 59:2-1(b)). See also Nieves v. Off. of the Pub. Def., 241 N.J. 567, 574-75 (2020) (explaining that "N.J.S.A. 59:1-2 declares that 'public entities shall only be liable for their negligence within the limitations of [the TCA] and in accordance with the fair and uniform principles established [in the TCA]'" (quoting N.J.S.A. 59:1-2)).

The requirements for holding a public entity liable for a dangerous condition on public property are set forth in N.J.S.A. 59:4-2. Polzo v. Cnty. of Essex, 209 N.J. 51, 66 (2012) (citing Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124-25 (2001)). Under the TCA, a public entity can only be held liable for an injury caused by a condition of its property if:

> [T]he plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a.    a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b.    a public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

"These elements are 'accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is

liable due to the condition of public property must fail.'" Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 656 (2022) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 585 (2008)).

1.    The Dangerous Condition.

If an employee of a public entity creates the dangerous condition, the plaintiff need not show that the public entity had actual or constructive notice because the knowledge is assumed. See Tymczyszyn v. Columbus Gardens, 422 N.J. Super. 253, 264 (App. Div. 2011) (explaining that "[t]he requirement that a public entity have actual or constructive notice of a dangerous condition is 'not applicable where public employees through neglect or wrongful act or omission within the scope of their employment create a dangerous condition'" (quoting Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003))).

Plaintiff contends that the City created the dangerous condition by failing to comply with the requirements of N.J.S.A. 27:5G-4 and, therefore, he was not required to prove that the City had actual or constructive notice of the dangerous condition.  N.J.S.A. 27:5G-4(a) provides that "[e]very bridge or overpass carrying a railroad, with a clearance of less than [14'6"] from the roadway beneath, shall have the maximum clearance marked or posted thereon in

accordance with the current standards prescribed by the Manual on Uniform Traffic Control Devices for Streets and Highways [(the Manual)]."

Plaintiff's argument concerning N.J.S.A. 27:5G-4 fails for several reasons. First, plaintiff did not establish that the City failed to comply with the statute. The evidence at trial established that the City had posted a sign on Avenue P stating that the overpass railroad bridge was 12'2" above the roadway. The City exercised its discretion, in accordance with the Manual, and placed the sign near the overpass at a location within the City's right-of-way. Therefore, the City did not violate the statute.

Second, to the extent that plaintiff argues that the City should have placed more than one sign, or should have placed the existing sign in a different location, that argument is precluded by the TCA as a matter of law. Under the TCA, a public entity is generally not liable "for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices." N.J.S.A. 59:4-5. Accordingly, the City has discretion concerning where it places traffic signs. See Smith v. State, Dep't of Transp., 247 N.J. Super. 62, 68-69 (App. Div. 1991); Aebi v. Monmouth Cnty. Highway Dep't, 148 N.J. Super. 430, 433 (App. Div. 1977).

Moreover, plaintiff provided no expert testimony to contend that the City had exercised its discretion in a manner that was palpably unreasonable. See Est. of Gonzalez v. City of Jersey City, 247 N.J. 551, 571 (2021) (explaining that "[w]hen a public entity's or employee's actions are discretionary, liability is imposed only for 'palpably unreasonable conduct'" (quoting Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 495 (2014))).

Finally, plaintiff did not show that the sign was missing because of the City's action or inaction. Plaintiff relied on the City's failure to respond to certain requests for admissions to support its claim that the City created the dangerous condition. The admissions, however, only acknowledged that the sign warning of the low height of the overpass railway bridge was not present on March 26, 2015. Those admissions do not establish that the sign was missing because of the City's actions or omissions.

In short, there was no evidence presented on the summary judgment motion or at trial establishing that the City created the dangerous condition. Thus, plaintiff needed to present evidence that the City had notice of the condition. Because plaintiff presented no evidence that the City had actual notice that the sign was missing, the specific issue in this case was whether plaintiff presented evidence establishing that the City had constructive notice.

14

2.    Constructive Notice.

The TCA provides:

> A public entity shall be deemed to have constructive
> notice of a dangerous condition . . . only if the plaintiff
> establishes that the condition had existed for such a
> period of time and was of such an obvious nature that
> the public entity, in the exercise of due care, should
> have discovered the condition and its dangerous
> character.
>
> [N.J.S.A. 59:4-3(b).]

We have explained that if the dangerous condition may have only existed for a short period of time before the accident, the plaintiff has not shown that the public entity had constructive notice. See Carroll v. N.J. Transit, 366 N.J. Super. 380, 388 (App. Div. 2004).

Both on the summary judgment motion and at trial, the evidence was undisputed that before the accident the City had posted a sign by the railroad bridge on Avenue P stating that the overpass was 12'2" above the street. It was also undisputed that on the day of the accident, the sign was missing. What plaintiff failed to prove was when the sign went missing. Thus, there is no evidence establishing that the dangerous condition had existed for a sufficient time during which the City, in the exercise of due care, should have discovered the condition. In that regard, there was a work order showing that on February

15

17, 2015, the sign giving notice of the height of the overpass was reinstalled. Plaintiff failed to establish when the sign went missing thereafter before March 26, 2015.

In short, the jury had no evidence from which to conclude that the City had constructive notice that the sign was missing. To the extent that the jury answered a question on the verdict sheet stating that the City had constructive notice, that finding was not supported by any competent evidence at trial.

Before us, plaintiff argues that the work orders from 2011 and 2014 show that the sign had previously been knocked down and therefore gave the City constructive notice. That argument is not supported by the facts or the law. The work orders from 2011 and 2014 do show that the sign had been knocked down in 2011 and in 2014. The work order from February 2015, however, establishes that some time before February 2015 the sign had been reinstalled and then knocked down again on or before February 11, 2015. The material, critical, and undisputed fact is that the sign was reinstalled on February 17, 2015.

To the extent that plaintiff wants to argue that there was some problem with the sign itself or how the City had installed the sign, plaintiff needed an expert to testify to that effect. Plaintiff had no expert. Consequently, the evidence only shows that something or someone knocked down or took down

16

the sign at some point between February 17, 2015, and March 26, 2015, the date of the accident.

3.     Whether the City's Conduct Was Palpably Unreasonable.

In defining the limits of a public entity's responsibility for a dangerous condition on public property, the TCA also provides:

> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

Plaintiff did not present any evidence that the City acted palpably unreasonably regarding the sign on Avenue P. Plaintiff presented no testimony or expert testimony that the City should have performed routine inspections of its signs, or that, even if the City had performed routine inspections, it deviated from a standard of care by not discovering the missing sign in a reasonable period of time.

V.

In summary, the trial court should have granted the City summary judgment. Moreover, the trial court should have granted the City a directed verdict both at the close of plaintiff's case and the close of all evidence.

A-1709-23

Therefore, we vacate the judgment entered on January 22, 2024. We also reverse the orders entered on (1) June 7, 2019, denying the City's motion for summary judgment; (2) November 2, 2023, denying the City's motion for a directed verdict at the close of plaintiff's case; and (3) November 6, 2023, denying the City's motion for a directed verdict at the close of all evidence. We remand this matter with direction that the trial court enter an order dismissing plaintiff's claims for failure to establish that the City was liable under the TCA.

Vacated, reversed, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1709-23